THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ELADIO BERMÚDEZ PÉREZ, Defendant and Appellant.

No. CR-66-126.     Decided April 24, 1967.

*Héctor M. Martínez* for appellant. *J. F. Rodríguez Rivera, Acting Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

---

## JUDGMENT

The record having been examined and the briefs of the parties having been considered, the judgment entered by the Superior Court, Ponce Part, on July 29, 1964, is hereby reversed. *People* v. *Soto Zaragoza,* 94 P.R.R. 332 (1967).

It was so decreed and ordered by the Court as witnesses the signature of the Chief Justice who, as well as Mr. Justice Belaval, concurs with Mr. Justice Santana Becerra in his dissenting opinion in this case.

(s) LUIS NEGRÓN FERNÁNDEZ
*Chief Justice*

I attest:

(s) JOAQUÍN BERRÍOS
*Secretary*

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. CHIEF JUSTICE NEGRÓN FERNÁNDEZ and MR. JUSTICE BELAVAL concur, dissenting.

San Juan, Puerto Rico, April 24, 1967.

This case is decided by the Court by the following judgment:

"The record having been examined and the briefs of the parties having been considered, the judgment entered by the Superior Court, Ponce Part, on July 29, 1964, is hereby reversed. *People* v. *Soto Zaragoza,* 94 P.R.R. 332 (1967).

As in several other bolita cases which the Court has recently been deciding in a similar manner, this judgment is rendered under legal premises with respect to our function of deciding as a Court of Second Instance, with which I am not fully in accordance, invoking the traditional rules which

govern the reviewing function in contradistinction to the sentencing function. I hereby set forth the grounds for my nonconformity but first let me make a brief history as background of the case.

## I

Act No. 220 of 1948 declared bolita, bolipool and other clandestine combinations and lotteries a public nuisance and instructed and directed the Police of Puerto Rico and the special investigation force created by said Act to *seize*, upon a search warrant issued by a competent magistrate, and to place at the disposal of the proper court any mimeograph, device, material, coin, tool or implement, in use or which may be used to operate and circulate the business of the number games known as bolita, bolipool and other clandestine combinations; and also, to arrest any person who violates the provisions of that act. It provided that when the Police of Puerto Rico, or that special investigation force, upon a search warrant, whenever necessary, should surprise one or more persons in any room, house, building . . . or premises of any kind engaged in the manipulation of the games known as bolita, bolipool and such clandestine combinations and lotteries, it shall *seize* all the implements, coins, devices, materials and tools, and bring the matter before the district attorney so that said person or persons may be prosecuted. If at the time of the search there should be no one in the said premises, the act presumed that the person or persons in possession of the premises searched, as lessees, owners or otherwise shall be deemed responsible for the unlawful manipulation of such devices.

Section 4 of Act No. 220, on which most of the sentences under this statute are based, provided that any person caught *carrying or transporting or who has in his possession* for any reason any *papeleta, billete*, ticket, notebook, list of numbers or letters, slips, or implements which can be used for the

unlawful games of bolita, bolipool and such clandestine lotteries, and any person who possesses, sells, or in any way transports *these* or any *other similar* ones which may be utilized or used in said unlawful games or connected with the practice thereof, shall be guilty of an offense and shall be immediately arrested and the case shall be brought without delay before the district attorney with jurisdiction thereof who shall file the proper information. Section 9 provides that any person who purchases or in any way acquires any *billete, papeleta,* ticket, list of numbers or letters, slips, or implements used in the games prohibited by the act shall be guilty of an offense and shall be arrested immediately and be prosecuted.

In the light of the pronouncements of law used in the text copied, the Executive Power adopted the position from the beginning that in prosecutions for violations of this act material evidence of such tools, devices, lists, slips and other implements shall be produced. Every information was preceded by the seizure of such material evidence to be introduced at the trial, such evidence being obtained, under a search warrant, as a result of searches incidental to a legal arrest or detention. Whenever the evidence mentioned was suppressed by the court because of a violation in the process to obtain it there were no convictions for bolita.

While the sworn statements to obtain the warrant necessary for the search of bolita material were immune to challenge regarding the veracity of the facts stated therein, this system of investigation operated during many years to the apparent satisfaction of the government. When those statements became subject to attack regarding the truth of the facts stated therein—*People* v. *Torres,* 80 P.R.R. 238 (1958)—the system was impaired and it can be said that the prosecution ceased to be as effective as before. Not only was the procedure for requesting search warrants more per-

fected when the agent knew he had to risk being faced with the truth of the facts stated by him to obtain the warrant but the evidence obtained was susceptible, to a greater extent, to being suppressed, as it was, by the trial courts, because of doubts as to the reality and credibility of those facts. Where the evidence was suppressed by reasons of credibility in the search incident, even though the manner of obtaining it was adjusted to law, there were no convictions either.

In view of the reality stated, there appeared what may be called a second stage in the manner of investigating bolita, and the undercover agent made his characteristic appearance. From the experience I derive from the majority of the cases which have come to the attention of this Court, under this second modality, the seizure of material evidence by means of search warrant fell practically in disuse, at least, as to the violations of § 4, which were the most investigated ones.

## II

On May 13, 1960 Librado Seda was convicted in the Superior Court, Mayagüez Part, on 19 counts for violation of § 4 of the Bolita Act with the testimony, as only evidence, of an undercover agent who stated that in those many occasions he had bought from Seda number 935 for the amount of $1.00 for the illegal game of bolita, number which Seda entered in a list of three-digit figures followed by a dash and another number to the right, for said illegal game; and that Seda once gave him $22.50 when he guessed an *aproximación* to number 935, which money was admitted in evidence.

In *People v. Seda*, 82 P.R.R. 695, decided May 23, 1961, we affirmed the convictions and the investigation and con-

viction for bolita by means of the sole testimony of an undercover agent, without material evidence,[1] were held valid.

I voted in favor of the affirmance of the convictions in *Seda*, even though I had a feeling of worry and fear that with the lapse of time the situation could dangerously degenerate against the guarantees of the citizen into what seems to be our present experience. To let the guilt or innocence of a defendant rest solely on the edge of the credibility of one person—the undercover agent—as the sole factor, and the latter highly subjective, could in the long run create an insecure situation, both for the citizen on trial and for the government. While the trial judges were disposed to believe the undercover agent, and such was the case at the beginning, the convictions were to follow systematically and as routine with the *Seda*-style testimony, it being almost impossible for the defendant to show in court that the agent was lying.[2]

On the other hand, and this time in detriment to the government, when the trial judges, with the lapse of time and by force of repetition, would cease to believe the undercover agent because of a testimony which this Court has now labeled as "stereotyped," the acquittals could likewise follow systematically and methodically, even though the violations continued to be committed. That was the danger of depending solely, either in one sense or the other, on the credibility of a single person.

The concern and fear of the situation presented justify the admonition made in the *Seda* case itself: (p. 708)

---

[1] Affirmed in *Seda* v. *People of Puerto Rico*, 299 F.2d 576 (1st Cir.); *cert. denied, Alvarez* v. *Puerto Rico*, 370 U.S. 904.

[2] Experience shows that any person who lives for a while in one of our communities, ordinarily small, gets to know, by public rumor and hearsay who are the persons dealing in bolita in that community even if no judgment of guilt or evidence of his prosecution is presented. For an unscrupulous undercover agent, but convinced of said knowledge, the situation may be easy for a framed-up case or a false testimony.

"... To establish that in order to prove a crime it is necessary to produce *in every case* documentary evidence, consisting in the ticket or lists of numbers, is to leave open a wide gap through which the violators may easily escape punishment. Such could not have been the legislative intent. However, if that evidence is available or if it may be obtained without great difficulty, it should be presented or at least the failure to do so should be explained satisfactorily. In the present case the failure to present 'material' proof was duly justified. On the other hand, the defendant did not present any evidence and chose to rely on the questions of law presented, thereby preventing the trial court from exercising its mission of weighing the evidence. We agree that in those cases where the evidence to which the defendant refers is not presented, the court should require that it be satisfactorily shown, as was done here, that it was impossible to obtain said evidence despite the diligence duly practiced."

Under the undercover agent system it became easier to write the admonition than to actually have it enforced. The failure to introduce material evidence was systematically justified by the trial judges and by this Court by the agent's easy and routinary explanation that its seizure tended to destroy his condition of undercover and disclose his identity. The failure to arrest the offender immediately, as provided by law was systematically justified by the trial courts and by this Court on the same ground of the agent's identity. The delay in prosecuting, about 6 months in *Seda* but up to ten, eleven, and almost a year in other cases, was also justified by the same reason of the agent's identity. See *People* v. *Seda*, citing likewise *People* v. *Superior Court*, 81 P.R.R. 445 (1959). Rather the burden of proof was placed on defendant to show that the delay had placed him in an indefensible position. It was in this aspect that the factor of the delay was considered, but not as an element affecting adversely the credibility of the agent.

Those rules prevailed without any alteration in the judicial prosecution and conviction of the violators of bolita between May 1961 when *People* v. *Seda* was decided and

June 30, 1966. With slight exceptions this Court ordinarily affirmed on the grounds (1) that the testimony of the agent—it was usually to the effect that at a particular time and place or day he bought from the defendant a bolita number (faced with the impossibility to controvert the oral testimony, for that matter, it could have been either 728 or 827)—was sufficient testimony at law for a conviction, and (2) the trial judge having believed that testimony, there was no reason to disturb the judgment of conviction.

## III

On June 30, 1966 *People* v. *Ayala Ruiz*, 93 P.R.R. 686 (1966), was decided. In this judgment the typical version of the agent to which I have been referring was characterized as a "stereotyped version" and the traditional testimony of the agent which served for the conviction in this specific case as a "slim and bare" testimony.

The way I construe and understand the decision in *Ayala Ruiz*,[3] the case is not adjudged on the basis of legal insufficiency of the evidence, although at times it seems to be so. It is deemed rather that the trial judge should not have given credit to the testimony of the undercover agent (see footnote 1 of that opinion) and the Court reverses on the basis of reasonable doubt in the second instance.[4] From an exam-

---

[3] Illness prevented me from taking part in the consideration, discussion, and decision of this case.

[4] In *Ayala Ruiz*, the undercover agent testified that on September 16, 1962 he watched Ayala from a distance of from 5 to 7 feet while the latter talked to some persons at a service station; that Ayala asked them what number they wanted to play and they told him the number; the agent went closer and the defendant asked him: "Are you going to play also?," he answered yes, gave him a dollar and asked him to play number 912; defendant told the agent the drawing was to be made by the last three figures of the Lottery of Puerto Rico; then he took the dollar and wrote down the number in a black Composition book which had 3-digit numbers followed by a dash and other figures to the right. That after making the transactions Ayala boarded a car with license plate number 706-296 and left. That he

ination of the record it does not seem to me that the evidence in the *Ayala Ruiz* case was weaker than the traditional evidence presented in *Seda* and thereafter in so many other convictions. Furthermore, there is perhaps a corroborative element of the agent's testimony made by defendant himself. Contemporaneously with the acquittal of Ayala in June 1966, not to go further back, we affirmed eight of ten other convictions for bolita under the same pattern of *Seda*.

In *Ayala Ruiz* some consideration is given to the element of delay, not as estoppel according to *Seda*, to prepare a defense—actually Ayala produced evidence of alibi—if not for the first time, as element related to the credibility and weight of the evidence.

## IV

The judgment of acquittal in this case is based on two assumptions albeit they are not expressed therein: (1) the evidence at law is sufficient to sustain the conviction and (2) that the Court should not give it full credit. The judgment concludes that the evidence does not establish guilt beyond all reasonable doubt and he is acquitted. I do not

---

did not arrest Ayala immediately because he was working as undercover agent. He did not ask for the names of two persons who were with the defendant because that would arouse suspicion. That he did not know defendant prior to that date and he was stationed there because many violations of the law occurred there, they sold cane rum, bolita, and firearms. He delayed in making his report because, in their parlance, a raid was under way and he had to wait orders from his Chief. To ask for a slip in case he hit the winning number might arouse suspicions.

Ayala tried to establish an alibi placing himself somewhere else with his own testimony and that of two witnesses which rather than facts contained their conclusions. The court did not believe that evidence. In his direct examination Ayala admitted, on questioning by his attorney, that he was the owner of automobile license plate number 706-296 and that the vehicle had been confiscated when he was arrested for bolita, thus corroborating the agent in part.

know up to what point the conclusion ceases to be incompatible with the first[5] assumption.

## V

I understand that this might be the time for which certain concern was felt in the *Seda* case. Nothing prevents the Court from reexamining the effect that the lapse of time might have worked in that decision. With what I am not in agreement is the manner in which it is sought to approach the problem. Since the decision of the *Ayala Ruiz* case, a vicious circle seems to have been created. The "stereotyped" nature which now seems to characterize the undercover agent's testimony is the inevitable result, as the Solicitor General rather properly pointed out at a recent hearing, of the very system of pursuing the violation. It is a question of similar acts of sale and listing bolita numbers, or of the right, by pay, of participating in the game or lottery. On the other hand, to strengthen the typical testimony now considered "slim and bare" with corroborative elements, including material evidence, would tend to destroy the undercover personality of the agent and would practically render the system ineffective. At least that is what the Government explains. Regarding the delay in trying the defendant, also justified for the protection of the undercover system, it does not necessarily operate in direct proportion of cause and effect concerning the veracity. A false case, framed by the agent does

---

[5] The case is typical of *Seda* in its facts. The undercover agent testified that while he was at an establishment drinking beer with other persons on July 20, 1963, defendant arrived and sat at the table and offered a number to one of those present. The latter accepted and handed him $2. The defendant checked it on a list. At his invitation, others played and the agent played number 037 with 60 cents for a $300 prize. The agent asked the defendant to deliver to him the slip with the number and the latter told him that it was sufficient if he checked it on the list of numbers, which he did in his presence. He filed his statement with the district attorney on November 15, 1963. The defendant brought evidence tending to establish his reputation, but did not controvert the facts charged.

not gain credibility because the person is tried in a relatively short time. Inversely, a violation actually committed should not lose credibility because its trial is delayed. The problem would always arise, unless the arrest were practiced immediately which would betray the identity, as to where to draw the dividing line between the delay which would affect and the delay that would not affect the veracity. This would have nothing to do with the possible defenselessness of defendant for said delay, which presents a different aspect.

The problem is borne at present by the system itself which should be reexamined. It is not created by the manner in which the trial judges have been disposing of every particular case following the ruling in *Seda*. It is unquestionable that this Court has a supervisory corrective function regarding the actions of the courts of first instance, and that each case, whether civil or criminal, must be decided in the light of its own particular facts. But in all cases the problem stems from a *common pattern* of persecution of the violations of bolita, unlike any other isolated case in the whole system of investigation.

In the exercise of our function of judicial supervision we are subject, as every court of second instance, to certain rules the convenience and soundness of which have been proved by time and experience. Among them, perhaps the most important rule is that the function of credibility corresponds to the trial judge.

To reaffirm the criterion that the evidence of the undercover agent, "slim" as it has been termed, is sufficient at law to support a conviction, but to transfer here on appeal, case after case, the function of passing on the credibility of the agent and the evidence and to affirm; or to refuse credibility, and acquit because of reasonable doubt, does not seem to me the best way of facing the problem which I repeat is of a typical system of persecuting certain offenses. I understand that it creates a situation fraught with difficulties for the

Court itself in the disposition of these cases, the credibility being a factor essentially subjective in the mental process of passing judgment. Nor does it allow the necessary orientation to the trial judges and the government itself, if the time has come to look for other methods to pursue the violators of bolita. They have the right to know whether *People* v. *Seda* still continues to be a good law or if by an indirect process of erosion it has been rendered invalid.[6]

I do not believe that *People* v. *Seda* and *People* v. *Ayala Ruiz* can coexist, each with its full juridical force. The characterization of *Ayala Ruiz*, if it is to prevail, must lead to the conclusion that this evidence, as it is, is insufficient at law to imprison a citizen. The government must search for evidence of a better quality. But if *Seda* keeps all its strength there is no reason to meddle here with the traditional function which is of the exclusive incumbency of the trial judge: the function of credibility. Of course, this does not hold for those cases in which obviously the evidence is unreal, or intrinsically incredible, or where everything indicates that it is a false case framed by the agent, in which case the agent himself should receive separate treatment.

The reasonable doubt invoked in this case does not arise from the evidence as believed by the trial court but from the transfer of that primary function to this second instance. Since I believe it is unjustified to interfere with that function and, on the other hand, the evidence having been con-

---

[6] The concept of reasonable doubt is not treated in the same manner in first and second instance or appeal. The trier of facts reaches that stage after weighing, gauging, settling conflicts, explaining conflicts, believing some, but not others, believing in part or in whole, which functions are reserved to the trial judge or the jury. In second instance, where that function does not exist, a state of reasonable doubt would have to rest on evidence as it has been already believed and weighed by the judge. The concept is then identified and merged with the other of the legal sufficiency of competent evidence to sustain a conviction in the second instance.

sidered sufficient to sustain the conviction, I am of the opinion that it should be affirmed.

For the reasons stated which represent my position in this and other bolita cases which offer similar problems pending in the Court, I dissent.